594 So.2d 1366 (1992)
Raymond Morgan ALLEN & Suzan G. Allen, Plaintiffs-Appellants,
v.
Janet THIGPEN, Asi-Elite Travel, Inc., Defendants-Appellees.
No. 90-658.
Court of Appeal of Louisiana, Third Circuit.
January 30, 1992.
Writ Denied April 20, 1992.
*1367 Aaron J. Allen, Michael S. O'Brien, Lafayette, Lane M. Hipple, Baton Rouge, for plaintiffs-appellants.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, James F. Diaz, Lafayette, for defendants-appellees.
Before FORET, STOKER and DOUCET, JJ.
DOUCET, Judge.
In this suit plaintiffs sought mental anguish damages for breach of contract and in tort from a travel agency and the agency individual with whom they negotiated. Plaintiffs charge fault on the part of the defendants in failing to advise them that visas would be required for entry into France. The trial court rejected the plaintiffs' demands and also denied damage claims asserted in reconvention by the defendants. Plaintiffs and reconvenors appeal. We affirm.

FACTS
Raymond Morgan Allen and Suzan G. Allen are husband and wife. Mr. Allen is an attorney. Over a period of time, they have traveled over the world to many countries and are experienced and sophisticated travelers. In 1988, the Allens decided to attend a continuing legal education seminar in Aix-en-Provence, France, which was developed, organized and sponsored by Louisiana State University. The seminar began on July 11, 1988.
Mr. Allen asked Mrs. Allen to make arrangements for their trip and stay in Aix-en-Provence. Suzan Allen called Janet Thigpen of ASI-Elite Travel, Inc. She asked the agency to make arrangements for the Allens for certain specific needs. Suzan Allen asked Janet Thigpen to obtain airline reservations, hotel reservations at one of the hotels recommended by LSU, rental automobile reservations and, if possible, to obtain opera tickets and tickets to a summer festival. Janet Thigpen successfully handled the first three requests. She booked the Allens with Air France for transportation from Dallas, Texas by direct flight to France. When the Allens arrived in Dallas for their departure, the airline denied them passage because they did not have visas for entry into France. In this suit, the Allens charge that Janet Thigpen and her agency should have advised them they would need visas to enter France and that she failed to do so. Ordinarily, France did not require visas. The defendants admit that neither Janet Thigpen nor anyone *1368 else at the defendant travel agency advised the Allens that at that particular period of time France did require visas for entry.
At some point in their discussions, Janet Thigpen asked Suzan Allen if the Allens had obtained their passports. Suzan Allen replied that they did have their passports as they had been to France before. Janet Thigpen did not mention the need for visas. Janet Thigpen and her agency were not involved in the continuing legal education seminar to be held in France and were not involved in its promotion. The Allens sought the assistance of Janet Thigpen and her agency on their own and made the specific requests mentioned above.
In their reconventional demand, Janet Thigpen and ASI-Elite Travel, Inc. seek reimbursement of certain expenses incurred in making reservations for the Allens and injury to their business reputation.

ACTION OF THE TRIAL COURT
The trial court rejected the demands of both plaintiffs and the defendants as reconvenors. We find it appropriate to quote liberally from the trial judge's well expressed reasons for his rulings. In part, the trial judge stated:
"The Allens have raised this cause of action based on two (2) theories of law. One is breach of contract. And the other is negligent breach of a duty imposed on the travel agency by the general rules of our civil code. Addressing itself first to the issue of breach of contract, the Court recognizes that there can be an oral agreement between an individual and a travel agency for the performance of certain services. The Court acknowledges that the travel agent renders services to those who wish to travel. Those services can vary greatly, depending on a number of factors. Examples of some of those factors would be the destination, the duration of the voyage, the complexity of the voyage in terms of various destinations, the complexity of the requests for services from the agent, which can range anywhere from a simple purchase of an airline ticket, all the way through the complete booking of every detail for a trip around the world, with many, many stops of long duration.
"There was a contract in this case, an oral agreement between the Allens and the agency. But an examination of that agreement would indicate that its terms were limited, that the terms of the contract or the terms of the agreement, were that the agency would provide the services requested, which were airline booking, hotel booking, rental car booking, and the attempt to obtain tickets to artistic or entertainment, musical events. I believe that the contract could have been extended by agreement between the parties for additional services, such as the giving of advice or information on travel documentation required for entry into the country of destination. There's been no evidence in this case that the contract or the agreement was extended by the parties to include those terms. I believe that insofar as breach of contract is concerned, the plaintiffs have failed to meet their burden of showing that there was a contract which included the provision of those services and a subsequent breach of the terms of that contract.
"With regard to the question of negligence on the part of the agency, which is the second theory under which the Allens seek to recover, the Court has to examine the duty which may or may not be imposed upon the travel agency. Again, because of the nature of the business and for the lack of any jurisprudence defining the duty of a travel agency, the Court finds that that can also vary, depending on factors which may be presented. Many of the factors being the same as those outlined by the Court for the terms of the agreement. In addition to those factors, I think, should be added the individual judgment of the travel agent as to the needs of the client. I think that if inquiries are made of the travel agent, and the travel agent agrees to answer those inquiries, then a duty can be extended for that service. I think that if the client appears to have a lack of knowledge, or a lack of experience, or lack of sophistication in travel, I believe the travel agent has a duty to recognize that, and to act accordingly, and to respond to the perceived needs of the traveler.
*1369 "So, in summary, I think that the duty of the travel agent holding itself out to be a service company to provide for the needs of the traveler extends beyond the mere honoring of requests, if there are indications which the normal reasonable business person involved in that service agency would perceive as extending the duty. This duty has been testified to by the experts.
"In this particular case, looking at the facts, the Court finds that the reasonable perception which could have been made by the travel agent would have been as follows, and based on the following determinations of facts.
"First, the travel agency was contacted by Mrs. Allen by telephone. She had specific requests. Those have been outlined as being air travel booking, hotels, very specific and detailed hotel booking requests; later on, the booking of a car rental, and then, the request for booking a concert.
"It has been indicated that the Allens took it upon themselves to make a study of the area in which they were going to travel, to include not only cultural aspects of the area, but also, language aspects. It was indicated that the Allens had engaged in previous travel, and were therefore not inexperienced in international travel. It was indicated to the agency by Mrs. Allen that the event that they were attending in France was a sponsored event, which according to the testimony of the three (3) travel agents who testified, in addition to the individual defendant, Ms. Thigpen, that that triggers a perception on the part of the travel agent, that some information has been disseminated by the sponsors of the event, regarding the requirements, that prove to be, according to the evidence in this case, an inaccurate assumption. But nevertheless, it was the perception of the agency.
"Perhaps, more specifically, the Court recognizes that the agency initiated an inquiry into the knowledge and sophistication of the plaintiff travelers. And that inquiry was `Do you have your passports?' The response to that inquiry by Mrs. Allen was `Yes, we have our passports in order, and we have been to France before', triggering an added perception by the travel agents that these people, the plaintiffs, were experienced, sophisticated travelers, who knew about passports, and about international travel.
"The Court will also recognize that in the exhibits, the passport of the Allens, if I may have them, which were secured by the Allens specifically or renewed specifically for this trip in April of 1988. These were not old passports. It was pointed out by the defendant that on Page 5, beginning where Visa stamps are placed on the passport, that there was an indication that Visasquoting, `It is the responsibility of the passbook bearer to obtain the necessary Visas'. The Court will also recognize that on the very first page of the passport, which is indicated as Page 2, but it immediately follows the photograph and the personal information. There is a section entitled `General Information'. The very first sentence is `Visas. It is the responsibility of the passport bearer to obtain the necessary Visas'.
"The Court finds that with regard to the question of negligence on the part of the travel agency and the agent, which are defendants in this case, that the plaintiffs have failed to meet their burden of proof to show that there existed a duty on the part of the travel agents to inform them that Visas were necessary for entry into their destination country at the time that they were traveling. The Court notes that three (3) persons testified as experts in the case, all brought by the defense, all of whom testified as experts in the operation of travel agencies, that it is not the responsibility or the obligation of the travel agent to inform anyone for the necessity for Visas. The Court does not totally accept that testimony as true, but does accept it in the case where the perception of the travel agent is that the traveler is not a novice or unsophisticated traveler. And perhaps may be true as a legal obligation in all cases.
"This Court is not here to determine what good business practices are, or what makes a good travel agent, or what makes the service of a particular travel agent in a *1370 particular situation good or bad. This Court is here to determine whether or not a legal duty has been breached, and this Court finds no evidence that a legal duty exists, nor does it find that if one does exist, that it was breached in this particular circumstance. For this reason, the main demand on the part of the plaintiffs will be dismissed at their cost.
"With regard to the third party demand by the defendant travel agency, the Court notes that the defendants candidly testified that they can produce no proof whatsoever that is not speculative in nature of any loss of business to them.
"Likewise, the Court finds that the third party plaintiffs have not met their burden of proof in showing any mental anguish as a result. More significantly, the Court finds that likewise no evidence has been presented to show that the Allens, third party defendants, had any duty to the travel agents to get on that airplane and go to that country and stay in that motel. There's been no evidence to indicate that an obligation existed on their part, other than to pay the required deposits or advances, and to refrain from interfering with any possible commissions that the agent may have earned. But this Court sees no duty owed by the Allens to the travel agency to complete their plans for the trip. I think that it is a risk that the travel agent takes that a trip may be cancelled, even at the last minute.
"With regard to the actual money refunded by the agency to the Allens, that being the hotel money, I think it was nine hundred forty-eight ($948.00) dollars, the Court finds that having no duty to the Allens to refund that money under the law, but having done so, as a matter of moral obligation, rather than legal obligation, or as a matter of good public relations, or simply out of an act of generosity, the refunding of that money constitutes a gift or a donation to the Allens, and that will not be allowed in recovery to the defendants. So, the third party demand by the defendants is likewise dismissed at their cost."

OPINION
The appeals in this case do not present issues of fact. The litigants challenge the trial court's conclusions based on the facts. We find that the trial court's rulings were correct. In effect, the trial court held that Janet Thigpen and the travel agency were mere "order takers" and were not consultants. Consequently, they owed no duty either under contract law or tort principles to do more than they were requested to do.
Mr. and Mrs. Allen complain particularly of the trial court's reference to "the lack of any jurisprudence defining the duty of a travel agency" concerning the tort phase of the case. The plaintiffs cite certain jurisprudence from other jurisdictions which they assert establishes duties owed by travel agencies and upon which they rely in this appeal. The cases cited are readily distinguished.
The question of the duties of travel agents came before the Louisiana Court of Appeal for the Second Circuit in an opinion authored by Judge Lanier as recently as October 18, 1991, in the case of Philippe v. Lloyd's Aero Boliviano, 589 So.2d 536 (La. App. 2nd Cir.1991). The plaintiffs in Philippe asserted a claim in tort and contract stemming from brain injury (caused by inadequate oxygen) Robert Philippe sustained while flying at high altitudes on a tour organized, promoted, arranged and conducted by the defendants, including a tour agency. The Second Circuit found that the plaintiffs in Philippe stated a cause of action in contract against the tour agency which organized and operated the tour. The tour agency owed a contractual duty to the injured plaintiff to warn him of the dangers of flying in an airplane at extremely high altitudes. Philippe is instructive because the role played in that case by the tour agency was entirely different from the role played by the defendant Janet Thigpen and her agency.
In Philippe, the tour agency created a package deal which it advertised, promoted, sold and conducted. The Second Circuit found that the injured plaintiff relied on representations made by the tour agency in *1371 brochures and otherwise. When the plaintiffs placed themselves in the hands of the agencies, the agencies became the agents for the Philippes. Because of the broad representations of the agency and the fact that the agency conducted the tour (a tour escort went along), the agency's contractual duties were broad enough to include a duty to warn of possible medical risks in flying at high altitudes.
In contrast to the factors in Philippe, the Allens had a limited contractual relationship with the defendants. The defendants' duties extend only to performance of the services Mrs. Allen requested of Janet Thigpen. For much the same reasons, we find that defendants owed no duty under tort law to inform the plaintiffs of the necessity for visas to visit France at the particular time in question.
We find no error in the trial court's holding that the defendants failed to prove any business loss. Additionally, the trial court correctly denied the defendants' third party demand for the return of $948.00 refunded to the Allens. The trial judge correctly characterized the refund of the hotel deposit and agency commission as a good will gesture or a matter of public relations. Otherwise, the reasonable course would have been to refund only the actual deposit, not its commission. As the trial judge stated, the refund constitutes a donation to the Allens. As such, it is not recoverable by the defendants.
For the reasons given above, the judgment of the trial court is affirmed. The costs of this appeal are assessed one-half to plaintiffs and defendants in reconvention, and one-half to defendants and plaintiffs in reconvention.
AFFIRMED.
FORET, J., dissents in part and concurs in part, with reasons.
STOKER, J., concurs fully in the affirmance of the trial court's judgment on the main demand and concurs in part and dissents in part as to the affirmance of the judgment on the reconventional demand and assigns written reasons.
FORET, Judge, dissenting in part and concurring in part.
I respectfully dissent from the dismissal of plaintiffs' demand, but I concur in Judge Doucet's denial of defendants' reconventional demand.
Although plaintiffs were "sophisticated" travelers, they were not aware, although they had been to France before, that at the time of this particular trip, a visa was required to enter France. This was all the more reason for the travel agent to specifically tell the Allens that a visa was required to visit France. Defendants breached that duty, and should be liable to the plaintiffs for the damage caused them.
STOKER, Judge, concurring in part and dissenting in part.
I fully concur in the rejection of the plaintiffs' demands in the main demand.
In the reconventional demand, I concur in the rejection of the demand of the reconvenors for recovery of alleged business losses. I dissent from the denial of recovery by reconvenors of the sum of $948 which was paid by defendants and reconvenors to Raymond and Suzan Allen after they cancelled their trip to France. This sum was originally advanced by the Allens to the defendants and reconvenors for the purpose of making an advance reservation at a hotel in France. Janet Thigpen sent the required amount to the hotel and made the reservation. The amount actually sent amounted to $853.20 as defendants and reconvenors retained $94.80 as their commission. After the Allens cancelled their trip the defendants apparently refunded the money to plaintiffs in the expectation of later receiving a refund from the hotel. The hotel, however, refused to refund the money, and in their reconventional demand defendants asked for a return of the refund paid to plaintiffs. The trial court found that the defendants refunded the money to the plaintiffs because of a moral obligation, a matter of good public relations, an act of generosity, or a gift or donation, and denied recovery.
*1372 In my opinion there was no natural, or moral obligation on the part of defendants to refund the money, under LSA-C.C. art. 1760 and art. 1762. Rather, defendants were merely acting as intermediaries in forwarding plaintiffs' reservation payment to the hotel. Since the defendants did not breech a contract or tort duty to plaintiffs, as previously discussed, the defendants are not at fault for plaintiffs' loss of their reservation payment to the hotel. The loss of that payment is one of the consequences of the plaintiffs' failure to obtain visas, resulting in non-use of their reserved hotel room.
With respect to the commission of $94.80, the defendants fulfilled their specific obligation owed to the Allens in making the hotel reservation. The defendants earned their commission, and their right to the commission is unaffected by the fact that the Allens decided not to make their trip.
Therefore, defendants are entitled to repayment of their erroneous refund of plaintiffs' hotel reservation payment, under LSA-C.C. art. 2301, et seq.